# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ERIK DENNIS, individually and on behalf of all other persons similarly situated, | |
| *Plaintiff,* | CIVIL ACTION NO. |
| VS. | |
| IDT CORPORATION and IDT TELECOM, INC., | |
| *Defendants* | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

ERIK DENNIS, ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants IDT CORPORATION and IDT TELECOM, INC., (collectively referred to herein as "Defendants") to stop Defendants' practice of making unsolicited telemarketing calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## INTRODUCTION

1.   Defendant IDT Corporation is a leading provider of international voice and payment services headquartered in Newark, New Jersey.   IDT Corporation, through its division, IDT Telecom, Inc., markets and sells PIN-less international prepaid calling services. Boss Revolution PIN-less allows smart phone users to make single touch international calls.  Since its introduction, Boss Revolution and other PIN-less providers have largely supplanted the traditional prepaid international calling card industry

2.   In an effort to solicit potential customers, Defendants recruited, or employed call centers who began making telephone calls, *en masse*, to consumers across the country as early as 2015. On information and belief, Defendants and or its agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendants and or its agents makes automated calls.

3.   Defendants conducted wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.   The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendants'

---

unlawful conduct, Plaintiff files the instant lawsuit and seek an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA up to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

5.  By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

6.  Plaintiff brings this class action against Defendants to secure redress because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' telephones.

## PARTIES

7.  Plaintiff ERIK DENNIS is a natural person and citizen of Decatur, Georgia.

8. Defendant IDT CORPORATION, is a corporation organized and existing under the laws of the State of New Jersey, with its headquarters located at 520 Broad Street, Newark, New Jersey 07102. Defendant may be served with process through service upon its vice president and general counsel, Joyce Mason, at 520 Broad Street, Newark, New Jersey 07102.

9. Defendant IDT TELECOM, INC., is a corporation organized and existing under the laws of the State of New Jersey, with its headquarters located at 520 Broad Street, Newark, New Jersey 07102. Defendant may be served with process through service upon its vice president and general counsel, Ely D. Tendler, at 520 Broad Street, Newark, New Jersey 07102.

10. Plaintiff does not yet know the identity of Defendants' employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. They will be named, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at

* 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as Defendants.

11. Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants, or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

13. The Court has personal jurisdiction over Defendants because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

18. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

19. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears

the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

20. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

21. There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

## A. DO NOT CALL VIOLATIONS OF THE TCPA

22. <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

23. <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

24. <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

25.  The Affirmative Defense of Prior Express Consent. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("*Satterfield*")). "Prior express consent is an affirmative defense for which the Defendants bears the burden of proof." *See Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the Defendants bears the burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

## COMMON FACTUAL ALLEGATIONS

26.  Defendant IDT Corporation is a leading provider of international voice and payment services headquartered in Newark, New Jersey.  IDT Corporation, through its division, IDT Telecom, Inc., markets and sells PIN-less international prepaid calling services. Boss Revolution PIN-less allows smart phone users to make single touch international calls.  Since its introduction, Boss Revolution and other PIN-less providers have largely supplanted the traditional prepaid international calling card industry

27.   In an effort to solicit potential customers, Defendants recruited, or employed call centers who began making telephone calls, *en masse*, to

consumers across the country as early as 2015. On information and belief, Defendants and or its agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendants and or its agents place automated calls.

28. They proceeded to contact people without having actual obtained consent to contact consumers on their cellular phones or residential land lines, notwithstanding consumers' registration with the Do Not Call registry. In Defendants' overzealous attempt to market its services, they placed phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendants. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

29. Defendants knowingly made these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF DENNIS

30. On or about October 10, 2007, Plaintiff registered his cellular phone number with the area code (404) and ending in 6446 with the National Do Not Call Registry.

31. In the Fall of 2015, Plaintiff received calls on his cellular telephone from the number (800) 676-8312, offering prepaid cellular service products under the brand Boss Revolution.  Plaintiff confirmed these numbers belonged to Defendants.

32. Plaintiff is the regular carrier and exclusive user of the telephone assigned the number ending in 6446.  The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

33. Plaintiff never had a business relationship with Defendants.

34. Plaintiff never provided Defendants with prior consent to contact him on his phone via a text message or a telephone call.

35. Nonetheless, Defendants called Plaintiff at least fifty (50) times on his phone during a twelve-month period.  Defendants always attempted to sell Plaintiff prepaid phone service plans under the brand Boss Revolution.

36. Defendants called Plaintiff multiple times per day.  When he did not answer the phone, the calls from Defendants seemed more frequent.  When

Plaintiff did answer the calls, he explained that he was not interested in prepaid cellular plans and asked for the calls to cease. Defendants told Plaintiff he would be placed on Defendants' internal do-not-call list; however, Plaintiff continued to receive calls from Defendants.

37. Defendants' unsolicited telemarketing calls caused Plaintiff extreme aggravation and occupied his telephone line.

38. Plaintiff has reason to believe Defendants called thousands of telephone customers listed on the DNC to market their products and services.

39. Plaintiff's overriding interest is ensuring Defendants cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

40. In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

41. On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendants to cease all illegal telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

# STANDING

42. Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims states: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## A.   INJURY IN FACT

43. Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims states: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

44. Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution. *(Id.)*

45. For an injury to be concrete it must be a de facto injury, meaning it actually exists.   In the present case, Plaintiff took the affirmative step of

enrolling on the National Do-Not-Call Registry for the purpose of preventing marketing calls to his telephone. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

46. Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.*, No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

47. For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7. Furthermore, Plaintiff is the individual who pays for the phone, and is the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

**B.**     **TRACEABLE TO THE CONDUCT OF EACH SEPARATE DEFENDANTS**

48. Plaintiff must allege at the pleading stage of the case facts to show that his injury is traceable to the conduct of Defendants. In this case, Plaintiff satisfies this requirement by alleging that Defendants, and/or agent of Defendants on behalf of Defendants, placed illegal calls to Plaintiff's phone.

49. In the instant case, Defendants placed dozens of calls to Plaintiff's wireless/cellular phone in 2015.

**C.**     **INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

50. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiff's Prayer for Relief includes a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.  Furthermore, Plaintiff's Prayer for Relief requests injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

51. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ____

---

(2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in

*Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to

sue Defendants on the stated claims.

## CLASS ACTION ALLEGATIONS

**A.    CLASS ALLEGATIONS**

52. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure

23(a), (b)(2), and (b)(3) on behalf of themselves and the following class defined

as follows (the "Class"):

> **"DNC[2] Class":** All natural persons in the United States who,
> from May 20, 2014 to the commencement of this litigation,
> received more than one telephone solicitation call in a 12-
> month period telemarketing Defendants' Products more than 31
> days after registering their telephone number with the National
> Do-Not-Call Registry and who did not have a prior established
> business relationship with Defendant and did not provide
> Defendant prior express written consent to receive such calls.

53. The following individuals are excluded from the Class: (1) any Judge

or Magistrate presiding over this action and members of their families; (2)

Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any

entity in which Defendants or its parents have a controlling interest, and its

current or former employees, officers, and directors; (3) Plaintiff's counsel and

Defendants' counsel; (4) persons who properly execute and file a timely request

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47
U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released; and (7) persons for whom Defendants have proof of legally sufficient consent to call those persons.

54. This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

55. Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

56. Plaintiff and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiffs and members of the Class using a pre-recorded voice for telemarketing purposes without first obtaining prior express consent.

## B.   NUMEROSITY

57. The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

58. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

## C.  COMMONALITY AND PREDOMINANCE

59. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

60. Common questions for the Class include, but are not necessarily limited to the following:

(a)  Whether Defendants' conduct violated the TCPA;

(b)  Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;

(c)  Whether Defendants systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(d)  Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

(e)  Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

## D.  TYPICALITY

61.  Plaintiff's claims are typical of the claims of the other members of the Class.

62.  Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiffs and the Class.

## E.  ADEQUATE REPRESENTATION

63.  Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

64.  Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

## F.  POLICIES GENERALLY APPLICABLE TO THE CLASS

65.  This class action is appropriate for certification because the Defendants has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

66. Defendants' practices challenged herein apply to and affect the Class' members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

## G.   SUPERIORITY

67. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

68. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

69. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

70. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

71. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("DNC Claim")

72. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

73. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

74. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)— provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

75. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or

telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

76. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

77. Defendants made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiffs and members of the DNC Class never provided any form of consent to receive telephone calls from Defendants.

78. Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

79. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

80. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

81. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

82. Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure, and requests the attorneys' fees be awarded.

## DEMAND FOR PRESERVATION

83. Plaintiff also specifically demands that Defendants retain and preserve all records related to the allegations in this Complaint. Specifically, Plaintiffs demand for preservation includes, but is not limited to, the following documents and information:

(a)  All documents evidencing all phone numbers, including spoofed numbers, used by Defendants and/or persons acting on its behalf in making telemarketing calls to numbers on the National Do-Not-Call Registry since May 18, 2014;

(b)  All documents evidencing the number of telephone solicitation calls made to numbers on the National Do-Not-Call Registry to which Defendants, and/or persons acting on its behalf, made more than one telephone solicitation call since May 18, 2014;

(d)  All documents, including transmission or phone logs, showing dates of all telephone solicitation calls made to numbers on the National Do-Not-Call Registry and the identity of the persons

so solicited by Defendants, and/or persons acting on its behalf, since May 18, 2014;

(e) All documents supporting the contention of Defendant that it had the prior express consent of any called party to whom a call to numbers on the National Do-Not-Call Registry was made since May 18, 2014; and all documents evidencing the names, addresses numbers of all such persons who Defendants contend provided such prior express consent;

(f) All documents supporting the contention of Defendants that it had an existing business relationship with any called party to whom a telephone solicitation call was made to numbers on the National Do-Not-Call Registry since May 18, 2014; and all documents evidencing the names, addresses and/or telephone numbers of all persons with whom Defendants contend it had such a relationship;

(g) All documents evidencing or pertaining to the knowledge of Defendants of the TCPA and/or the regulations and rulings of the FCC thereunder;

(h)     All documents evidencing or pertaining to any and all lawsuits and/or settlements to which Defendants were a party which, in whole or in part, pertain to the TCPA;

84.     Demand is made on Defendant to notify any third parties or vendors retained by Defendants to make telephone solicitation calls to numbers on the National Do-Not-Call Registry of this preservation demand and request production of any documents included within this demand.

## JURY DEMAND

85.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a.     An order certifying the DNC Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP and TURNER LAW OFFICES, LLC as lead Class Counsel;

b.     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.   An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.   An injunction requiring Defendants and Defendants' agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.   Pre-judgment and post-judgment interest on monetary relief;

f.   An award of reasonable attorneys' fees and court costs; and

g.   All other and further relief as the Court deems necessary, just, and proper.

Dated:  May 21, 2018                    Respectfully submitted,


TURNER LAW OFFICES, LLC


By: /s/      Henry A. Turner
     Henry A. Turner
     Georgia Bar No. 719310

403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 378-6274
hturner@tloffices.com

**HUGHES ELLZEY, LLP**

By:   /s/ Jarrett Ellzey
    W. Craft Hughes*
    Texas State Bar No. 24046123

    Jarrett L. Ellzey*
    Texas State Bar No. 24040864

    HUGHES ELLZEY, LLP
    Galleria Tower I
    2700 Post Oak Boulevard, Suite 1120
    Houston, TX 77056
    Tel: (713) 554-2377
    Fax: (888) 995-3335

*Pro hac vice admission will be requested